# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

TRACY A. STOKES,
    Plaintiff,

v.                                  Case No. 07-C-0496

DAVID BETH,
    Defendant.

## DECISION AND ORDER

Plaintiff, Tracy A. Stokes, a state prisoner, filed this pro se civil rights complaint under 42 U.S.C. § 1983. Before me is plaintiff's petition to proceed in forma pauperis.

### I. IN FORMA PAUPERIS PETITION

Pursuant to 28 U.S.C. § 1915(b)(1), plaintiff is required to pay the statutory filing fee of $350.00 for this action. If he does not have the money to pay the filing fee, plaintiff can request leave to proceed in forma pauperis. To proceed with an action in forma pauperis, the prisoner must complete a petition and affidavit to proceed in forma pauperis and return it to the court with a certified copy of his trust account statement showing transactions for the prior six months. The court then assesses and, when funds exist, collects from plaintiff at the time the action is filed an initial partial filing fee of 20% of the average monthly deposits to or the average monthly balance in his trust account for the six-month period immediately preceding the filing of the complaint.[1]

---

[1] In no event will a prisoner be prohibited from bringing a civil action because he or she has no assets and no means by which to pay the initial partial filing fee. 28 U.S.C. § 1915(b)(4).

In this case, plaintiff filed a certified copy of his prison trust account statement for the six-month period immediately preceding the filing of his complaint. Pursuant to this court's order dated November 7, 2007, he has been assessed and paid an initial partial filing fee of $1.17.[2] Thus, plaintiff's petition to proceed in forma pauperis will be granted. The remainder of the filing fee will be collected as set forth below.

## II. SCREENING

I am required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). I must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. Denton v. Hernandez, 504 U.S. 25, 31 (1992); Neitzke v. Williams, 490 U.S. 319, 325 (1989); Hutchinson ex rel. Baker v. Spink, 126 F.3d 895, 900 (7th Cir. 1997). The court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. Neitzke, 490 U.S. at 327. "Malicious," although sometimes treated as a synonym for "frivolous," "is more usefully construed as intended to harass." Lindell v. McCallum, 352 F.3d 1107, 1109-10 (7th Cir. 2003) (citations omitted).

---

[2] To date, plaintiff has paid $2.34 of the $350.00 filing fee.

To avoid dismissal for failure to state a claim, the complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). It is not necessary for plaintiff to plead specific facts; his statement need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Erickson v. Pardus, __ U.S. __, 127 S. Ct. 2197, 2200 (2007) (citations omitted). In deciding whether the complaint states a claim, the court must accept as true all of the factual allegations contained in the complaint. Bell Atl. Corp. v. Twombly, __ U.S. __, 127 S. Ct. 1955, 1965 (2007). There is no heightened pleading requirement for pro se prisoner civil rights complaints. Thomson v. Washington, 362 F.3d 969, 970-71 (7th Cir. 2004). Of course, if a complaint pleads facts that show that a plaintiff does not have a claim, the complaint should be dismissed "without further ado." Id. at 970.

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege: (1) that he was deprived of a right secured by the Constitution or laws of the United States; and (2) that the deprivation was visited upon the plaintiff by a person acting under color of state law. Gomez v. Toledo, 446 U.S. 635, 640 (1980). The court is obliged to give the plaintiff's pro se allegations, however inartfully pleaded, a liberal construction. See Erickson, 127 S. Ct. at 2200 (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

**A.  Background**[3]

Plaintiff was incarcerated at Kenosha County Jail at all times relevant. Defendant David Beth is the Sheriff of Kenosha County.

---

[3]The allegations in this section are derived from plaintiff's complaint and accompanying affidavit.

Plaintiff came to be detained at the Kenosha County Jail as a result of a parole revocation. Although plaintiff's final revocation hearing was scheduled for May 17, 2006, he did not meet with his attorney until May 15, 2006. When plaintiff requested a continuance, the administrative law judge chose a date beyond the ten days set forth in Wis. Stat. § 302.335, and plaintiff was in the meantime detained. After speaking with several individuals regarding this matter, plaintiff wrote to defendant Beth and asked him to investigate the situation but never received a response to his letter.

While he was detained, defendant denied plaintiff writing materials, forcing plaintiff to trade food to obtain such materials. Defendant also denied plaintiff access to his legal materials at certain times, especially when plaintiff was in segregation, as well as to law finders, books and forms, with the exception of only five statute books. Plaintiff was not permitted to use a typewriter or word processor, although federal and immigration detainees were. As a result of having limited legal resources, plaintiff missed briefing deadlines and was denied relief by the courts.

Defendant also denied plaintiff access to reading material. Specifically, defendant withheld newspapers plaintiff ordered by mail. Plaintiff was only given a Bible that does not comport with his religion. Moreover, defendant opened all of plaintiff's incoming and outgoing mail. For example, defendant opened a letter plaintiff wrote to the Kenosha News that was placed in the institution mail. Plaintiff's letter never arrived at the newspaper. Defendant's agents have read plaintiff's mail and made joking comments about his mail to staff and other detainees.

Plaintiff makes several allegations regarding the conditions of his confinement. First, he was forced to shower with his hands handcuffed at his waist, making it impossible

4

to wash his hair and parts of his body, and causing him to fall and sustain physical injury. Moreover, while he was in segregation, defendant kept bright lights on twenty-four hours a day. When plaintiff complained to staff, they said that the lights were left on to make segregation uncomfortable. As a result of the constant illumination in segregation, plaintiff suffered great mental anguish. Additionally, defendant regularly denied plaintiff meaningful exercise, often punishing inmates for doing any kind of cardio workout. For example, plaintiff was threatened with a taser for exercising, and was also placed in the "ice box"–a room that often reaches temperatures as low as thirty-eight degrees–without a shirt or blanket for several hours.

Defendant Beth also retaliated against plaintiff for providing legal assistance to other inmates as well as for complaints plaintiff made regarding conditions of confinement and other issues. For example, plaintiff was moved to a separate housing unit from the detainees that he helped. Plaintiff was threatened with and sent to segregation in retaliation for his actions. The officers escorting him to segregation, including Officer Smith and other unnamed officers, severely assaulted him, causing him to suffer multiple physical injuries.

Additionally, defendant was deliberately indifferent to plaintiff's medical needs. Plaintiff states that since March 2006, he has suffered from multiple ear infections, causing him severe pain and the presence of blood and mucous in his ear; plaintiff's requests to see a specialist went unanswered and at times he was denied medical treatment altogether. For example, in May 2006, he was denied any kind of medical treatment for his ear for three weeks. Plaintiff has lost about 60% of his hearing in his right ear as a result of these actions. Plaintiff also states that his requests to defendant for medical

5

attention for his other injuries, such as those sustained as a result of the fall in the shower, which to date still cause numbness and tingling, and the assault by the officers escorting him to segregation, were ignored. Moreover, defendant often denied medical care to those inmates who could not afford a co-pay. Defendant has also denied plaintiff adequate dental care, forcing him to choose between suffering tooth pain or having a tooth pulled that could instead be repaired.

Defendant treated immigration detainees and federal prisoners at the facility differently from the way he treated plaintiff. For example, defendant did not charge immigration detainees and federal prisoners co-pays for medical care. Additionally, the immigration detainees and federal prisoners were given better and more medical attention, writing and legal materials, clothes, entertainment and opportunities to exercise and for recreation.

Finally, defendant Beth denied plaintiff due process during his disciplinary hearing. Specifically, defendant: (1) failed to give plaintiff written notice of the charges against him; (2) failed to give plaintiff twenty-four hours notice of his hearing; (3) failed to provide reasons for his decision; (4) kept plaintiff in solitary confinement for more than ten days; (5) denied plaintiff an opportunity to call or cross examine witnesses; (6) denied plaintiff access to evidence; (7) assessed multiple punishments for the same offense; and (8) denied plaintiff writing materials.

Plaintiff avers that defendant violated his rights under the First, Fourth, Sixth, Eighth and Fourteenth Amendments. For relief, he demands monetary damages and injunctive relief.

6

**B.    Analysis**

   **1.    First Amendment Claims**

Plaintiff claims that defendant Beth retaliated against him for providing legal assistance to other inmates. A prison official who takes action against a prisoner in retaliation for the prisoner's exercise of a constitutional right may be liable to the prisoner for damages. See Babcock v. White, 102 F.3d 267, 274 (7th Cir. 1996). A plaintiff must plead three elements to state a claim for retaliation: he must "specif[y] a retaliatory action;" he must name the appropriate defendants; and he must "assert[] a constitutionally protected activity, the exercise of which caused the . . . retaliatory action." Hoskins v. Lenear, 395 F.3d 372, 275 (7th Cir. 2005). In the present case, plaintiff has identified the appropriate defendant and pointed to the retaliatory act (transfer to segregation). Although it is unclear whether providing legal assistance to other inmates is a constitutionally protected activity, I have been instructed to construe such doubts in plaintiff's favor. See Jenkins v. McKeithen, 395 U.S. 411, 421 (1969). Thus, plaintiff has stated a retaliation claim.

   Plaintiff further claims that defendant Beth opened all of his incoming and outgoing mail. Prisoners have a limited liberty interest in their mail under the First and Fourteenth Amendments. Procunier v. Martinez, 416 U.S. 396, 413-14 (1974), overruled on other grounds by Thornburgh v. Abbott, 490 U.S. 401, 413-14 (1989). The inspection of personal mail for contraband is a legitimate prison practice, justified by the important governmental interest in prison security. Gaines v. Lane, 790 F.2d 1299, 1304 (7th Cir. 1986). However, further interference with an inmate's personal mail must be reasonably

related to legitimate prison interests in security and order. Turner v. Safley, 482 U.S. 78, 89 (1987). Accordingly, plaintiff may proceed on this claim.

### 2. Eighth Amendment Claims

Plaintiff asserts that he was denied medical and dental care. To establish liability under the Eighth Amendment, a prisoner must show: (1) that his medical need was objectively serious; and (2) that the official acted with deliberate indifference to the prisoner's health or safety. Farmer v. Brennan, 511 U.S. 825, 834 (1994); Chapman v. Keltner, 241 F.3d 842, 845 (7th Cir. 2001); see also Estelle v. Gamble, 429 U.S. 97, 104-05 (1976). A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Wynn v. Southward, 251 F.3d 588, 593 (7th Cir. 2001) (quoting Gutierrez v. Peters, 111 F.3d 1364, 1373 (7th Cir. 1997)).[4] A prison official acts with deliberate indifference when "the official knows of and disregards an excessive risk to inmate health or safety." Farmer, 511 U.S. at 837. Plaintiff has alleged that defendant was aware of and denied medical attention for ear infections, head and back injuries, and other conditions that arguably qualify as serious medical needs. Thus, plaintiff may proceed on these claims.

Plaintiff also alleges that he was denied medical treatment because he did not have the money to pay for it. In prisons, since inmates are deprived of the ability to seek health care on their own, the state is obligated to provide basic health care. As the Supreme

---

[4] The Court of Appeals for the Seventh Circuit has acknowledged that denial of dental care can violate the Eighth Amendment. Board v. Farnham, 394 F.3d 469 (7th Cir. 2005).

8

Court explained in DeShaney v. Winnebago County Dep't of Soc. Servs., 489 U.S. 189, 199-200 (1989):

> [W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well being . . . . The rationale for this is simple enough: when the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs - - e.g., food, clothing, shelter, medical care, and reasonable safety - - it transgresses the substantive limits on state actions set by the Eighth Amendment of the Due Process Clause.

Accordingly, plaintiff may proceed in this case based on allegations that he was denied medical care because he lacked adequate funds to pay for it.

Next, plaintiff claims that defendant's agents subjected him to excessive force when they allegedly assaulted him. The Eighth Amendment's Cruel and Unusual Punishments Clause prohibits "unnecessary and wanton infliction of pain" on prisoners. Hudson v. McMillian, 503 U.S. 1, 5 (1992). However, the complaint fails to state facts indicating defendant Beth's direct, personal involvement, as required by Gentry v. Duckworth, 65 F.3d 555, 561 (7th Cir. 1995). Nor has plaintiff provided any facts showing that the alleged violation of his constitutional rights occurred at Beth's direction or with his knowledge and consent. Id. Rather, plaintiff charges officer Smith, who is not a named defendant, with the attack. Accordingly, plaintiff has failed to make out an Eighth Amendment excessive force claim.

Finally, plaintiff alleges that he was subjected to unconstitutional conditions of confinement, such as extreme cold, constant illumination and lack of adequate exercise. The Eighth Amendment proscribes cruel and unusual punishment in cases of official conduct which is not part of the formal penalty for a crime if a plaintiff demonstrates: (1)

9

a "sufficiently serious" deprivation and, (2) that officials acted with a "sufficiently culpable state of mind." Wilson v. Seiter, 501 U.S. 294, 299 (1991). Mechanical rules are not to be employed in determining whether an alleged deprivation violates the Eighth Amendment. Rhodes v. Chapman, 452 U.S. 337, 346-47 (1981). However, "only those deprivations denying 'the minimal civilized measure of life's necessities' are sufficiently grave to form the basis of an Eighth Amendment violation." Wilson, 501 U.S. at 298 (quoting Rhodes, 452 U.S. at 347). Prison conditions cannot rise to the level of cruel and unusual punishment unless the conditions produce "the deprivation of a single, identifiable human need such as food, warmth, or exercise." Wilson, 501 U.S. at 304. Plaintiff has alleged facts that arguably could demonstrate such a deprivation, and he may therefore proceed on an Eighth Amendment conditions of confinement claim.

### 3. Fourteenth Amendment Claims

Plaintiff claims that defendant Beth denied him access to adequate legal research and writing materials. Prisoners have a due process right of access to the courts and must be given a reasonably adequate opportunity to present their claims. Bounds v. Smith, 430 U.S. 817, 825 (1977). Such access must be effective and meaningful. Id. at 822. In order to state a cognizable access to the courts claim, a complaint must "spell out, in minimal detail, the connection between the alleged denial of access to legal materials and an inability to pursue a legitimate challenge to a conviction, sentence, or prison conditions." Pratt v. Tarr, 464 F.3d 730, 732 (7th Cir. 2006) (citing Marshall v. Knight, 445 F.3d 965, 968 (7th Cir. 2006)). In the present case, plaintiff avers that the denial of adequate legal materials such as books, forms and writing materials made him miss filing deadlines and caused him to be denied relief. Thus, plaintiff has stated an access to the courts claim.

10

Next, plaintiff asserts that defendant Beth denied him due process during his disciplinary hearing. To establish a procedural due process violation, a prisoner must first demonstrate that the state deprived him of a liberty or property interest created either by state law or the Due Process Clause itself. See Sandin v. Conner, 515 U.S. 472, 483-84 (1995). A liberty interest exists when prison officials restrain the freedom of inmates in a manner that "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. at 484. Generally, discipline in segregated confinement does not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest. Id. at 485; see also Thomas v. Ramos, 130 F.3d 754, 760-62 (7th Cir. 1997) (prison inmate's 70-day confinement in disciplinary segregation was not "atypical and significant" deprivation of prisoner's liberty and thus did not implicate liberty interest protectable under due process clause; prisoner has no liberty interest in remaining in the general prison population). However, conditions that deny an inmate the minimal civilized measure of life's necessities may violate the Fourteenth Amendment. See Gillis v. Litscher, 468 F.3d 488 (7th Cir. 2006). Here, plaintiff has alleged that the conditions in segregation were atypical and far harsher than those in general population, and that defendant denied him adequate procedural protections prior to placing him in segregation. I therefore conclude that the complaint is sufficient to state a due process claim.

Finally, plaintiff avers that defendant Beth treated federal and immigration detainees better. I construe this allegation as arising under the Equal Protection Clause, which requires governmental entities to treat all similarly-situated persons in a similar manner. City of Cleburne v. Cleburne Living Center, 473 U.S. 432, 439 (1985). "To state an equal

11

protection claim, a § 1983 plaintiff must allege that a state actor purposefully discriminated against him because of his identification with a particular (presumably historically disadvantaged) group." Sherwin Manor Nursing Center, Inc. v. McAuliffe, 37 F.3d 1216, 1220 (7th Cir 1994). Generally, prisoners do not constitute a suspect class and thus state actions concerning prisoners as a group are generally not entitled to heightened scrutiny. Pryor v. Brennan, 914 F.2d 921, 923 (7th Cir. 1990). Where the circumstances do not involve a suspect classification such as race or gender, an inmate who challenges a particular prison practice or regulation must show or indicate that the regulation is not reasonably related to a legitimate governmental concern, or must demonstrate that the challenged regulation or practice is an exaggerated response to those concerns. See Turner, 482 U.S. at 89; Caldwell v. Miller, 790 F.2d 589 (7th Cir. 1986). At this stage, I will assume that plaintiff can make such a demonstration, and he may therefore proceed on an equal protection claim.

### 4. Sixth Amendment Claims

Plaintiff avers that defendant Beth violated his rights under the Sixth Amendment, which provides that "in all criminal prosecutions, the accused shall enjoy the right . . . to have the assistance of counsel for his defense." U.S. Const. Amend. VI. This right attaches once adversary proceedings have commenced against the accused. Maine v. Moulton, 474 U.S. 159 (1985); Robinson v. Percy, 738 F.2d 214 (7th Cir. 1984). In the present case, plaintiff avers that he was not allowed to meet with his attorney in his probation revocation case until two days before his hearing. Although it is unclear whether defendant Beth was responsible for such delay, plaintiff has stated a Sixth Amendment claim.

12

### 5. Fourth Amendment Claim

Plaintiff asserts that defendant Beth violated his rights under the Fourth Amendment. However, the basis for his potential Fourth Amendment claim is unclear. Furthermore, I must analyze plaintiff's allegations under the most "explicit source[s] of constitutional protection," Graham v. Connor, 490 U.S. 386, 395 (1989); Conyers v. Abitz, 416 F.3d 580, 586 (7th Cir. 2005), and in this case, the salient constitutional claims arise under the First, Sixth, Eighth and Fourteenth Amendments. Thus, plaintiff has failed to make out a claim predicated on the Fourth Amendment.

### 6. State Law Claim

Plaintiff avers that defendant Beth kept him incarcerated beyond the time limit set forth in Wis. Stat. § 302.335 and ignored his complaints that he was being illegally detained. Courts may exercise supplemental jurisdiction over claims so related to claims in an action that they form part of the same case or controversy. 28 U.S.C. §1367(a); see also Groce v. Eli Lilly & Co., 193 F.3d 496, 500 (7th Cir. 1999) (district courts have the discretion whether to retain or refuse jurisdiction over state law claims). Generally, § 1983 provides a remedy for constitutional violations, not violations of state statutes and regulations. Scott v. Edinburg, 346 F.3d 752, 760 (7th Cir. 2003); see also Archie v. City of Racine, 847 F.2d 1211, 1216-17 (7th Cir. 1988) (violation of state law does not give rise to an actionable § 1983 claim unless it independently violates the constitution or federal law).

Plaintiff contends that he was held in jail past the 10 days outlined in Wisconsin

13

Statute § 302.335.[5] It is unclear at this stage of the proceedings whether this provision bestows upon plaintiff any enforceable right. Inasmuch as I have been instructed to construe such doubts in his favor, Jenkins, 395 U.S. at 421, plaintiff may proceed with a state law claim.

### III. CONCLUSION

**For the foregoing reasons,**

**IT IS THEREFORE ORDERED** that plaintiff's petition to proceed in forma pauperis (Docket #2) is **GRANTED.**

**IT IS FURTHER ORDERED** that plaintiff's Fourth Amendment claim is **DISMISSED**.

**IT IS ORDERED** that the United States Marshal shall serve a copy of the complaint, the summons, and this order upon defendant pursuant to Federal Rule of Civil Procedure 4. Plaintiff is advised that Congress requires the U.S. Marshals Service to charge for making or attempting such service. 28 U.S.C. § 1921(a). The current fee for waiver-of-service packages is $8.00 per item. The full fee schedule is provided at 28 C.F.R. §§ 0.114(a)(2), (a)(3). Although Congress requires the court to order service by the U.S. Marshals Service precisely because in forma pauperis plaintiffs are indigent, it has not made any provision for these fees to be waived either by the court or by the U.S. Marshals Service.

**IT IS ORDERED** that defendant shall file a responsive pleading to the complaint.

---

[5]This provision sets forth various restrictions concerning the detainment of probationers in a county jail. It provides that the Wisconsin Department of Corrections shall begin a final revocation hearing within 50 days after the person is detained. This deadline may be extended by not more than 10 additional calendar days.

14

**IT IS ORDERED** that the Secretary of the Wisconsin Department of Corrections or his designee shall collect from the plaintiff's prison trust account the $347.66 balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the prisoner's trust account and forwarding payments to the clerk of the court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. § 1915(b)(2). The payments shall be clearly identified by the case name and number assigned to this action.

**IT IS FURTHER ORDERED** that copies of this order be sent to the warden of the institution where the inmate is confined and to Corey F. Finkelmeyer, Assistant Attorney General, Wisconsin Department of Justice, P.O. Box 7857, Madison, Wisconsin, 53707-7857.

Plaintiff is hereby notified that he is required to send a copy of every paper or document filed with the court to the opposing parties or their attorney(s). Fed. R. Civ. P. 5(a). Plaintiff should also retain a personal copy of each document. If plaintiff does not have access to a photocopy machine, plaintiff may send out identical handwritten or typed copies of any documents. The court may disregard any papers or documents which do not indicate that a copy has been sent to each defendant or to their attorney(s).

Plaintiff is further advised that failure to make a timely submission may result in the dismissal of this action for failure to prosecute.

In addition, the parties must notify the Clerk's Office of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

15

Case 2:07-cv-00496-LA   Filed 05/02/08   Page 15 of 16   Document 11

Dated at Milwaukee, Wisconsin, this 2 day of May, 2008.

/s_____
LYNN ADELMAN
District Judge